UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAUSTEVEION JOHNSON,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br>APRIL WITTER, *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. 3:13-cv-00689-MMD-VPC<br><br>ORDER REGARDING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE VALERIE P. COOKE |

**I.　SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge Valerie P. Cooke (dkt. no. 56) ("R&R") relating to Defendants' Motion to Dismiss (dkt. no. 30) and Defendants' Motion for Summary Judgment (dkt. no. 31). The Court has reviewed Plaintiff's objection (dkt. no. 58), Defendants' partial objection (dkt. no. 57), and the parties' responses (dkt. nos. 59, 60.)

**II.　BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the High Desert State Prison. The events giving rise to this action occurred while Plaintiff was held at Ely State Prison. Proceeding *pro se*, Plaintiff alleges that Defendants violated his constitutional rights through actions detailed in the R&R's factual background, which the Court adopts. (Dkt. no. 56 at 1-4.)

Plaintiff asserts three claims under 42 U.S.C. § 1983: a First Amendment retaliation claim against Defendants Witter, Manning, Thompson, and Pickering (Count I); an Eighth Amendment deliberate indifference claim against all Defendants (Count II); and a Fourteenth Amendment procedural due process claim against Defendants Manning, Lawrence, and Witter (Count III). In answering the Complaint, and before Plaintiff had an opportunity to conduct discovery, Defendants moved for summary judgment on each claim.[1] The Magistrate Judge recommends that summary judgment be granted with respect to Counts II and III, and that summary judgment be denied with regard to Count I. (Dkt. no. 56 at 18.)

## III.  LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). In light of both parties' objections, the Court has engaged in a *de novo* review to determine whether to adopt Magistrate Judge Cooke's recommendations.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ

---

[1] Defendants alternatively sought dismissal of each claim. (Dkt. no. 30.)

on the material facts at issue, however, summary judgment is not appropriate. *Nw. Motorcycle Ass'n*, 18 F.3d at 1472. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

The Court agrees with the Magistrate Judge's recommendation to grant summary judgment for Defendants on Counts II and III, and to deny summary judgment on Count I. The Court addresses each claim in turn.

3

### A. Count II: Deliberate Indifference

In Count II, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The R&R concludes that the undisputed evidence demonstrates that Plaintiff cannot establish the essential elements of his deliberate indifference claim, which requires showing that "the deprivation was serious enough to constitute cruel and unusual punishment," and that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citations and internal quotation marks omitted). The Magistrate Judge reasoned that Plaintiff cannot show that Defendants' alleged deliberate indifference caused him harm. (*See* dkt. no. 56 at 13 (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).)

The Court agrees with the Magistrate Judge's recommendation. The undisputed facts demonstrate an absence of harm to Plaintiff's health following the alleged confiscation of his hypertension medication. (*See id.*) First, on October 7, 2012, the day of Plaintiff's alleged first heart attack, Plaintiff sent a kite requesting a refill of his medication. (Dkt. no. 32-2.)[2] In the kite, Plaintiff describes his condition as a "chronic issue" and makes no mention of chest pain, let alone a heart attack. (*Id.*) The October 9, 2012, response to the kite states that Plaintiff had failed to refill his prescription for three months. (*Id.*) Next, a Chronic Disease Clinic Follow-Up form dated October 8, 2012, indicates that Plaintiff explicitly reported that he had no chest pain during an encounter with a medical practitioner the day after his alleged first heart attack. (Dkt. no. 32-3.) A different medical record suggests that an EKG was ordered for Plaintiff on October 8, 2012, but, two weeks later, Plaintiff rescheduled the EKG. (*See* dkt. nos. 32-4; 32-5; 32-6.) Plaintiff received the EKG on October 26, 2012. (Dkt. nos. 32-8 at 3; 32-10.) Plaintiff's subsequent medical records do not suggest any adverse diagnoses or findings arising from that EKG. (*See* dkt. no. 32-8.) Plaintiff also refused an EKG in October 2013. (Dkt.

---

[2]Dkt. no. 32 was filed under seal because it contains Plaintiff's medical records.

4

nos. 32-9, 32-13.) Finally, on November 4, 2012, the day after Plaintiff's alleged second heart attack, Plaintiff sent a kite requesting a refill of his hypertension medication. (Dkt. no. 32-7.) The kite did not mention Plaintiff's heart attack or any chest pain. (*Id.*)

In his objection, Plaintiff contends that with discovery, he could present evidence confirming that he suffered heart attacks on October 7, 2012, and November 3, 2012. (Dkt. no. 58 at 2.) Plaintiff suggests that an outside opinion could corroborate his allegations, but he does not indicate how, even in light of such additional evidence, a reasonable fact-finder could find in his favor. (*See id.*) Although the Court acknowledges that Plaintiff has not carried out discovery, the Court finds that Defendants have met their burden in demonstrating the absence of a genuine issue of material fact as to Plaintiff's alleged heart attacks. Because the undisputed evidence indicates that Plaintiff did not suffer the harm he allegedly experienced after his medication was confiscated, the Court will adopt the Magistrate Judge's recommendation and grant summary judgment for Defendants on Count II.

### B. Count III: Procedural Due Process

In Count III, Plaintiff alleges that Manning, Lawrence, and Witter violated his Fourteenth Amendment right to procedural due process by confiscating his property while he and his cellmate were moving cells on October 3, 2012, and by delaying its return or failing to return it. The Magistrate Judge recommends granting summary judgment for Defendants on this claim. (Dkt. no. 56 at 15-16.) In arriving at this conclusion, the Magistrate Judge noted the distinction between deprivations of property that are authorized and intentional and those that are unauthorized and either negligent or intentional. (*Id.* at 13-14.) If the deprivation was unauthorized, then Plaintiff's claim must fail because an adequate post-deprivation remedy exists in the form of Nevada's small claims process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). If, by contrast, the deprivation was authorized and intentional, then Plaintiff's due process claim depends on the constitutionality of the prison policy that governed the deprivation. *See Logan v. Zimmerman Brush Co.*, 455

U.S. 422, 435-36 (1982) (reasoning that a deprivation caused by an "established state procedure" could not be remedied by a post-deprivation hearing "absent the necessity of quick action by the State or the impracticality of providing any predeprivation process" (citations and internal quotation marks omitted)); *Frost v. Symington*, 197 F.3d 348, 354 (9th Cir. 1999). So long as the policy is connected to a legitimate objective, Plaintiff's procedural due process claim will fail. *Frost*, 197 F.3d at 354 ("[A] regulation that impinges upon a prisoner's constitutional rights is valid if the regulation 'is reasonably related to legitimate penological interests.'" (citation omitted)).

First, the Court agrees with the Magistrate Judge's recommendation that Manning and Lawrence are entitled to summary judgment on this claim. (Dkt. no. 56 at 15.) Plaintiff's claim will fall short regardless of whether Manning and Lawrence engaged in an authorized or unauthorized deprivation. According to Manning's affidavit, Plaintiff's property was confiscated in response to a perceived emergency situation. (*See* dkt. no. 30-4.) Manning states that the request to move cells was made on an emergency basis because Plaintiff and his cellmate were irritated with each other. (*See id.*) Manning additionally states that, in light of the anticipated cell move, he decided to remove the property from the cell, have other prison staff sort the property according to the inmates' personal property inventories, and then allow Plaintiff and his cellmate to claim any property that was not sorted. (*Id.*) These actions suggest that Manning and Lawrence confiscated the property to further a legitimate interest. The Court therefore agrees with the Magistrate Judge that the deprivation was intentional and authorized.

Plaintiff argues that a genuine issue of material fact exists as to whether Manning and Lawrence acted with intentional authorization in confiscating his property. Plaintiff insists that he and his cellmate amiably chose to switch cells, and that the situation was not an emergency. (Dkt. no. 58 at 3-4.) Plaintiff further argues that Manning and Lawrence were not acting pursuant to prison policy in disposing of items they confiscated from his cell. (*Id.* at 4-7.) Even accepting that there is a dispute over whether Manning and Lawrence were authorized by prison policy to confiscate Plaintiff's

property, Plaintiff's claim still falls short. If Manning and Lawrence were unauthorized in confiscating the property, Plaintiff cannot make out a procedural due process claim because an adequate post-deprivation remedy exists.[3] *See Hudson*, 468 U.S. at 533 ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause . . . if a meaningful postdeprivation remedy for the loss is available."). Nevada permits inmates to bring civil actions against NDOC officials for the loss of property. *See* NRS § 41.0322. Plaintiff's remedy is to seek relief under Nevada's small claims process.

Finally, as to Plaintiff's claim against Witter, the Court finds that Defendants are entitled to summary judgment under a theory of unauthorized deprivation. The Magistrate Judge reasoned that this claim could be dismissed under either theory, concluding that Witter had a legitimate penological interest in holding Plaintiff's property until October 15, 2012. (Dkt. no. 56 at 16.) In light of Plaintiff's objection (dkt. no. 58 at 6-8), the Court finds that Defendants have not met their burden in showing that no genuine issues of material fact exist as to whether Witter acted with a legitimate penological interest. Nevertheless, the Court will grant summary judgment for Defendants on Plaintiff's procedural due process claim against Witter in light of the post-deprivation remedy available to Plaintiff.

///
///

---

[3]Plaintiff objects that the existence of a post-deprivation remedy in Nevada's small claims process should not affect his ability to articulate a procedural due process claim. (Dkt. no. 58 at 7 (citing *Zinermon v. Burch*, 494 U.S. 113 (1990)).) In *Zinermon*, the Supreme Court distinguished between § 1983 claims that, like Plaintiff's claim, are premised on procedural due process, and claims that are based on substantive due process and other protected rights. *See Zinermon*, 494 U.S. at 124-26. Although Plaintiff is correct that "overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983," the *Zinermon* court clarified that, in the context of a § 1983 claim premised on procedural due process, "the existence of state remedies *is* relevant." *Id.* at 124-25. The procedural due process inquiry probes whether a plaintiff was afforded due process of law. Thus, as the *Zinermon* court explained, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126. Here, the Court considers whether the State of Nevada provides adequate process for the deprivation of Plaintiff's property interest.

### C. Count I: First Amendment Retaliation

The Court agrees with the Magistrate Judge's recommendation that summary judgment should be denied with regard to Plaintiff's First Amendment claim. (Dkt. no. 56 at 8-11.) Defendants raise two objections to this recommendation. First, Defendants contend that if Witter acted pursuant to a legitimate penological interest in withholding Plaintiff's property, then she could not have retaliated against Plaintiff. (Dkt. no. 57 at 4-5.) The Court's conclusion that a genuine issue of fact exists as to whether Witter was authorized in depriving Plaintiff of his property renders this objection moot. While the existence of this factual dispute does not affect Plaintiff's due process claim, it does affect his First Amendment claim if, as Plaintiff claims, Witter's reason for the delay was retaliatory. Second, Defendants contend that Thompson and Pickering should be dismissed from Plaintiff's First Amendment claim in light of arguments Plaintiff raised in his opposition to the Motion for Summary Judgment. (*Id.* at 5.) The Court is not persuaded by this argument. Plaintiff has alleged that Manning, Pickering, and Thompson were involved in the October 29, 2012, search underlying Plaintiff's First Amendment claims. (*See* dkt. no. 5 at 11.) Merely emphasizing Manning's involvement in the incident does not demonstrate the absence of a genuine issue of material fact regarding Pickering's and Thompson's alleged retaliation. Accordingly, the Court finds that Defendants are not entitled to summary judgment on this claim.

### V. CONCLUSION

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge Valerie P. Cooke (dkt. no. 56) be accepted and adopted in part. Defendants' Motion for Summary Judgment (dkt. no. 31) is granted with respect to Plaintiff's Eighth and Fourteenth Amendment claims. Defendants' Motion for Summary Judgment (dkt. no. 31) is denied with respect to Plaintiff's First Amendment claims.

///

///

It is further ordered that Defendants' Motion to Dismiss (dkt. no. 30) is denied as moot.

DATED THIS 31st day of March 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE